CENTRAL TRUST CO. OF NEW YORK v. WORCESTER CYCLE MFG. CO.

(Circuit Court, D. Connecticut. February 26, 1904.)

No. 927.

1. ATTACHMENT—SURRENDER OF PROPERTY TO RECEIVER UNDER STIPULATION —INSUFFICIENT DESCRIPTION IN SHERIFF'S RETURN.

The right to certain personal property of a corporation being in dispute between an attaching creditor and a receiver subsequently appointed by a federal court in a suit to foreclose a mortgage given by the company, a stipulation was made and approved by the court in the foreclosure suit by which the property was turned over to the receiver, to be sold without prejudice to the right of either party to assert his claim against the proceeds. Subsequently a trustee in insolvency was appointed for the corporation by a state court, who by leave intervened in the foreclosure suit, and asserted his right to the property, which he admitted in his pleading was retained by the sheriff under the attachment until surrendered to the receiver under the stipulation referred to. Some time after such surrender the sheriff made return on the attachment, in which, through mistake, he failed to describe certain of the property as required by the law of the state, although such property had been actually seized by him, and was surrendered under the stipulation. *Held* that, as the making of the return after the surrender of the property was unnecessary, it could not affect the rights of the attaching creditor under the stipulation, which estopped both the receiver and the trustee, who succeeded to the rights of the corporation, from denying the right of the attaching creditor to assert his claim to all of the property surrendered thereunder.

2. SAME.

　　The right to certain property being in dispute between a mortgagee, an attaching creditor and a trustee in insolvency of the debtor, the mortgagee and the trustee entered into a stipulation to divide the proceeds. *Held*, that such stipulation operated to surrender any rights of the mortgagee in one-half of the proceeds, but did not affect the right of the attaching creditor, who was not a party thereto, to assert his claim to such half as against the trustee.

3. SAME.

　　Where an attaching creditor has surrendered property to a receiver under a stipulation and order of the court appointing the receiver preserving his right to assert his lien against the proceeds, the court will not permit his rights therein to be defeated by the receiver, or others subsequently intervening in the suit, on any technical ground.

In Equity. On motion to accept master's report.

Breed & Abbott, for petitioner.

Perkins & Jackson and S. C. Loomis, for trustee.

C. Walter Artz, for receiver.

TOWNSEND, Circuit Judge. On or about June 10, 1897, J. Burnett Nash began an action in the superior court of the state of Connecticut, for the county of Middlesex, against the Worcester Cycle Manufacturing Company, by virtue of a writ directing the attachment of the defendant's property. By virtue of said writ the sheriff levied upon and attached all of defendant's property, both real and personal, within said Middlesex county, and took possession of all of its personal property. Said property was afterwards appraised as being of the reasonable value of $100,000. On or about June 26, 1897, the Central Trust Company of New York instituted a suit in this court to foreclose a certain mortgage, under which it claimed a lien on certain property of said Worcester Cycle Company located in said Middlesex county, and in said suit Frank Sullivan Smith was appointed receiver. At the time of his appointment the sheriff was in possession of all of said personal property as aforesaid. The receiver duly demanded said property, and the sheriff refused to yield possession thereof.

On or about the 10th day of July, 1897, said Nash and said receiver entered into a stipulation which recited that, whereas said Nash—

"Contends that he has certain valid and subsisting attachments * * * against the real and personal property of the said defendant, * * * and said Nash has levied thereunder upon all the personal property of the said defendant; and whereas, the said receiver maintains that he is at present entitled to the actual possession of all of said property of defendant in said state of Connecticut, and that his appointment as such receiver has dissolved said attachments, and is anxious to proceed at once as receiver, without the necessity of instituting legal proceedings for the purpose of obtaining possession of said personal property; and whereas, both parties agreed that the personal property of the defendant can be realized upon to the best advantage of all parties concerned by being speedily disposed of, and each party is desirous of preserving intact, with the least possible expense, all his personal rights in the premises, the parties stipulate and agree as follows:

"The receiver shall, as soon as he can obtain a hearing, with the full consent of the said Nash, move in the proper courts in Massachusetts and Connecticut for an order embodying the following directions, to the granting and entry of which this stipulation and agreement is subject:

"First. That the said Nash withdraw the sheriff's keepers in possession under his said attachments.

"Second. That such withdrawal of keepers by said Nash, and the taking possession of said attached property by said receiver, and the disposal of said personal property by said receiver in accordance with the orders of the said courts, shall be without prejudice to the said rights of said Nash under said attachments, or the claims upon which the same are based, to all intents and purposes as if this consent had not been given.

"Third. That the said Nash, without hindrance, allow said receiver to dispose of said personal property as directed in said first-mentioned orders, or as may be directed by future orders of the said courts, entered upon three days' notice in writing to said Nash or his attorneys, Messrs. Perkins & Jackson, of 115 Broadway, New York City.

"Fourth. That the present rights of said Nash to the said attached property shall, if the same be sold by the said receiver, be transferred to the proceeds of the said property in the hands of the said receiver, who shall hold the said proceeds subject to the said rights, and that if the said attached property be hereafter manufactured up, together with other property not in any way bound by the said attachments, then the said receiver shall hold, subject to the said rights, a sum equivalent to the proper appraised value, as shown in the said receiver's inventory, to be filed within ten days from the date of said order, of such attached materials as enter into the construction of such manufactured articles.

"Fifth. The right of the said Nash to accrued legal costs and disbursements on said attachments, and the amount thereof, shall be passed upon by said courts, and the said receiver shall reserve in his hands a sum sufficient to pay such costs as are provided for in the statutes of Connecticut and Massachusetts, and shall pay the same as directed by the said courts.

"J. Burnett Nash,
"By Perkins & Jackson, Attys.
"Frank Sullivan Smith, Receiver."

This stipulation was presented to, and ratified and approved by, this court; and an order was entered that said Nash should withdraw the sheriff's keepers in possession under his said attachment, and that such withdrawal and taking possession and disposition of said property by said receiver should be without prejudice to the rights of said Nash in said attachment, or the claims upon which the same were based. The court further ordered that said Nash allow said receiver to dispose of said personal property as directed by order of court, and that the present rights of said Nash in said property, if sold by the receiver, should be transferred to the proceeds of said property, as provided in said stipulation. Under said stipulation and order the sheriff, by direction of said Nash, surrendered possession of said property to the receiver.

On or about November 5, 1897, Charles C. Goodrich, of Hartford, in the state of Connecticut, was, on the application of a creditor of said Worcester Cycle Company, duly appointed by the probate court for the district of Middletown trustee in insolvency of said company for the benefit of the creditors, and duly qualified as such trustee, and petitioned for leave to intervene and answer in said foreclosure suit, which petition was granted; and upon appeal the Circuit Court of Appeals modified the decision so as to allow the intervener to be heard by proof and argument on behalf of the parties whom he represented, namely, the creditors of the defendant. In said petition to intervene, said Goodrich alleged, inter alia, that "the said sheriff retained possession under certain attachments of all of said personal and mixed property of the defendant," etc., until after the filing and entry of said stipulation and order. In his answer, subsequently filed, said Goodrich,

trustee, makes the same allegation and admission, and later, namely, on October 11, 1898, said Goodrich, trustee, made an express stipulation to the same effect; and this court, in its interlocutory decree, filed November 23, 1898, expressly found the fact of said possession by the sheriff until the delivery of the property to the receiver as aforesaid. Afterward said Goodrich, trustee, contended, and the Circuit Court held, that said mortgage was invalid as to the personalty because the property attempted to be covered thereby was not "particularly described," as required by the Connecticut statutes, and the mortgagee had not taken possession thereof. The Court of Appeals, in affirming said decision, held that the taking possession by the receiver was not a taking possession by the mortgagee, and that the rights of the creditors represented by the trustee were superior to those of the mortgagee, "since they have shown that, down to the time the court seized the property, nothing which mortgagor and mortgagee had done had operated to impair their rights to proceed against the res." The reason why the mortgagee had been unable to take possession of said personalty under its mortgage was that said personalty was in the possession of the sheriff under the Nash attachment. The receiver was originally authorized by order of court to "take immediate possession of, all and singular, the property; to continue, operate, and carry on the business of the defendant cycle company in such manner as the same is now conducted, or in such manner as will, in his judgment, produce the most satisfactory result." Pursuant to this order, he carried on said business for some two years, manufacturing bicycles, as far as possible, out of the stock included in the personal property delivered to him by the sheriff, and purchasing material necessary to complete said bicycles and make them salable; and he received large sums of money on such sales. The report of the receiver, however, shows that the management of the business has been attended by most disastrous results, and that while, according to his accounts, there is a balance due him from the Worcester Cycle Company of $600, he has no assets in his hands or under his control except certain personal property at Middletown, worth, perhaps, $3,000, which was part of the property delivered to him by the sheriff, and a fund amounting to $3,000, which is held under the following circumstances: On August 13, 1898, the American Surety Company brought its bill in this court to foreclose a first mortgage on the plant of said company. One Edward C. Beecher was appointed special master to sell certain personal property in part satisfaction of said first mortgage. There being a dispute as to whether certain of the said property was or was not included in said mortgage, the said Goodrich, trustee, made a stipulation with counsel for complainant in said American Surety Company suit whereby it was agreed that a certain parcel should be sold, and a further stipulation entered into that one-half of the proceeds should be paid over to the trustee, and the other one-half should be paid to the American Surety Company. No further stipulation was made, except as hereinafter stated. Counsel for J. Burnett Nash was not a party to this agreement, and it does not appear that he had any knowledge thereof. He was, however, a party to the foreclosure suit, and refused to allow said property to be sold under said foreclosure, except upon a stipula-

tion whereby his rights thereto should be protected. Thereupon a stipulation was entered into providing that said parcel might be sold, free from the lien of said Nash, and that the one-half claimed by the trustee should be paid to the special master, and should remain subject to the liens, if any, of the attachment procured by Nash; and a further stipulation was entered into between Goodrich, trustee, and Nash, that nothing done by reason of said sale should affect the rights of the trustee or of said Nash in said property. Under said stipulation, said Beecher now holds said sum of about $3,000, being one-half of the net amount realized on said sale, subject to the order of this court, for the satisfaction of the claim of said Nash, or to the credit of said trustee. Thereafter said Nash brought a petition for an order that Special Master Beecher pay over to him, in satisfaction of his claim, the money in his (Beecher's) hands, and for leave to said Nash to issue execution against the property of defendant in the hands of the receiver, and for an order authorizing the sheriff to levy thereon and sell so much as would be sufficient to satisfy the balance of Nash's attachment, and that, in case of a dispute as to the facts alleged, the same might be referred to a master. Various objections were raised to this petition by Goodrich, trustee, on a motion to dismiss the same. The grounds on which this motion was argued will be found in the opinion of this court in American Surety Co. v. Worcester Cycle Co., 114 Fed. 659. Briefly, this court held that the attachments were not dissolved by the appointment of the receiver; that the possession of the receiver under said stipulations and order of court was, in effect, the possession of the attaching creditor; that the Nash attachment was not lost because the time of its duration given it by statute after judgment rendered had expired; and finally held, upon all the facts, that good faith required that the confidence reposed by the attaching creditor in the order of this court that his rights be preserved should not be misplaced. Thereupon the court denied the motion to dismiss the petition, and appointed Edwin E. Marvin master, to find the facts and report the same to this court. This hearing is upon the acceptance of the master's report.

Counsel for the trustee has filed 26 exceptions, most of which are based upon the refusal of the master to find certain facts. Counsel for the trustee, however, does not otherwise except to the report of the master, nor press the exceptions for refusal to find said facts, unless this court shall reach a conclusion adverse to the claims of the trustee, in which event said findings of fact, it is claimed, would be material in the determination of his legal rights. Counsel for the receiver has filed eight exceptions, most of which are based upon the alleged findings of law by the master, whereas it is said the master was appointed to find the facts only. Counsel for the petitioner, Nash, does not except to the finding of facts by the master, but only to his findings of law. The master's report finds that the petitioner did obtain a valid attachment against all the property of the defendant, both real and personal, situated at Middletown, in so far as the same is specifically named in the officer's return. Said officer's return purported and was intended to cover all of the real, and every item of the personal, property of the Worcester Cycle Company that was in the factory at Middle-

town while he was in possession. It appears, however, that by some mistake a considerable portion of said property was not included in said return, although it remained in the possession of the sheriff.

The provisions of the General Statutes of the state of Connecticut (Revision of 1888) § 907, are as follows:

"A writ of attachment shall be served by attaching the estate of the defendant, personal or real, or both. * * * And, in every case of attachment, the officer serving the process shall leave with the person whose estate or body is attached, or at the place of his usual abode, if within the state, a true and attested copy of the process and of the accompanying declaration or complaint; and of his return thereon, describing any estate attached."

Under this statute it has been repeatedly decided that it is essential to the validity of the attachment that the property should be described in the officer's return. Ahern v. Purnell, 62 Conn. 21, 25 Atl. 393; Price v. Heubler, 63 Conn. 374, 28 Atl. 524; Metcalf v. Gillet, 5 Conn. 400, 404. The officer was directed to attach to the value of $5,000. It is admitted that the receiver has sold and received payment for property described in the return which is sufficient to satisfy said attachment. The report of the master, in connection with the facts already stated, shows that the stipulation between Nash and the receiver, ratified by the order of the court, and the surrender of the property to the receiver thereunder, were all long prior to the making of the return by the sheriff. Counsel for Nash therefore contends that as the sheriff was in full possession of all the property at the time when he surrendered the same, and had no further relations thereto at the time when he made the return, no act on his part, when he had delivered possession, could either increase or diminish the rights of the creditors. The making of the return was, if not unauthorized, at least an unnecessary act. Certainly the surrender of said property by the attaching creditor on the faith of said stipulation and order of court, and the subsequent admission of the trustee, already referred to, that the sheriff was in possession of said property, would estop the receiver to set up any such claim. Counsel for the trustee, it is true, contends that, as he had not been appointed, and was not a party to said stipulation, he is not bound by its terms. But the corporation, of which he was afterwards appointed trustee, was notified thereof, and of the application for the order ratifying same, and made no objection thereto.

In view of the foregoing considerations, and of the admissions made by the trustee, as aforesaid, in his petition to intervene and answer, and the findings of the court already referred to, I think the claim of the petitioner is not limited or in any way affected by the return of the sheriff, and that he is entitled to press his claim against any property surrendered to the receiver under said stipulation, or to the proceeds thereof sold by him under said stipulation.

As to the one-half of the proceeds of the parcel sold by Special Master Beecher, the trustee contends that neither the receiver nor the attaching creditor has any rights therein, for various reasons. The first reason assigned is that by the decree of foreclosure in the American Surety Company suit the rights of all of said parties in said property were cut off. But this would apply equally to the trustee. In fact, none of the parties were affected by the foreclosure of this parcel,

by reason of the stipulations already referred to, by which the American Surety Company surrendered its rights to the proceeds of one-half of said property. The agreement for a further stipulation between the American Surety Company and the trustee that one-half of said property should belong to him, while it would estop the American Surety Company, cannot affect the rights of the receiver, who was in possession as trustee for the attaching creditor, nor the attaching creditor, neither of whom was a party to said agreement. Furthermore, their rights to said property have been preserved by reason of the stipulation entered into by all parties, already referred to, that the rights of the attaching creditor should be transferred to one-half of the proceeds of said sale. The report of the master states clearly and accurately the facts shown upon the hearing before him. His statement of opinion as to certain questions of law presented seems to have been made for the purpose of explaining his rulings upon the introduction of testimony, and of placing the whole situation of the parties before the court as it appeared to him at said hearing. The question as to the respective rights of the receiver and attaching creditor is expressly reserved for the determination of this court.

The situation, so far as is pertinent to the disposition of this case, is as follows: The mortgage of the Central Trust Company was found by this court and the Court of Appeals to be invalid, so far as the personal property is concerned, because said property was not described in the mortgage as required by the provisions of the Connecticut statutes, and the mortgagee had not taken possession thereunder. Apparently, the only thing which had prevented it from taking possession prior to the appointment of the receiver was the taking possession of all of said property by this attaching creditor. By his attachment he saved property, inventoried by the receiver at cost prices at over $100,000, which, after the payment of his claims, would have been available for the satisfaction of the claims of the trustee, as representing other creditors. Under stipulations and the order of this court, he surrendered said property to the receiver, and in all the subsequent proceedings and litigation it has been stipulated by all parties that his original rights should not be impaired. The receiver admits the validity of said claim. The trustee insists that the attaching creditor is deprived of all right to the property at Middletown, and the proceeds of sale in the hands of Special Master Beecher, because the receiver has sold sufficient of the other property to satisfy his attachment, and that his rights are only against the proceeds of said sale. But it appears that, through a series of disastrous experiences, the responsibility for which it would not seem necessary at this time to determine, the receiver has lost all of said property and said proceeds, and now has a claim of some $600 against the estate, as already stated.

Counsel for the trustee claims that, as the mortgage to the Central Trust Company was invalid, the trustee would have been entitled to its possession, in any event. Whether the trustee owes his standing in court, and his right to such assets as may be paid after satisfying said attachments, solely to the intervention of the attaching creditors, is perhaps immaterial upon the question of law presented. "The trustee * * * must take the estate with the burdens placed thereon by him,

with all outstanding equities against it." Merwin v. Austin, 58 Conn. 22, 34, 18 Atl. 1029, 1030, 7 L. R. A. 84. See, also, Vansands v. Middlesex County Bank, 26 Conn. 144, 153; Palmer v. Thayer, 28 Conn. 237, 245; Cooke v. Thresher, 51 Conn. 105, 107.

The receiver obtained possession from the attaching creditors of all of said property, under the stipulation and order of court, which preserved the rights of the attaching creditors. As is said by the Court of Appeals in this case (Central Trust Company v. Worcester Cycle Mfg. Co., 93 Fed. 712, 35 C. C. A. 547):

"The property is taken by the court, and is put into the hands of its officer to hold for the benefit of 'whom it may concern.' He holds and manages it for the benefit of the party to whom the court may ultimately decide that it belongs."

Clearly, the lien of the attaching creditor should take precedence of all other claims. It was clearly the duty of said receiver, as such officer of the court, to hold the proceeds of the sale of said property, or a sufficient part thereof, for the satisfaction of said claim. For this purpose all the property and proceeds of its sale should be marshaled and subjected to the payment of said claim. It does not lie in the mouth of the receiver or trustee to assert any technical claim to defeat the rights of this attaching creditor, who during all these years has postponed proceedings for the collection of his claim in order to avoid embarrassing by unnecessary litigation the trustee and receiver in their attempts to realize on said property.

My conclusion is that the attaching creditor is entitled to have his claim paid; and that, if the receiver has no other available funds in his hands, he should apply the property remaining at Middletown, or forthwith dispose thereof, if necessary, for the purpose of satisfying said claim, and that, if said property is not sufficient, the special master, Beecher, should pay over the sum in his hands, or so much thereof as is necessary, in addition to the amount realized from the sale of said property, to satisfy said claim. Inasmuch, however, as the original instruction to attach was limited to the amount of $5,000, the amount of Nash's recovery should be limited to the amount named in the order of attachment, and in addition thereto he should be allowed a reasonable sum out of said fund for his reasonable costs and disbursements necessarily incurred and expended in the protection of his legal rights during the pendency of these proceedings.

Counsel unite in asking for a speedy disposition of this motion. Their briefs have been filed so late that it is impossible at this time to discuss at length all the propositions argued therein. The questions argued as to the duty of the receiver forthwith to turn over the property to the trustee, and as to the status of property purchased by him and commingled with the other property, or as to his personal liability, do not seem to be raised by the motion, or covered by the prayer for relief. It is stated that an accounting by the receiver has been begun. I think it is the duty of the receiver to complete his account, turn over to the trustee such property as may remain after the settlement of the claims of the attaching creditor, and such other claims, if any, as, on the settlement of the account, may be found to be prior to the rights of the trustee.

The claim of the judgment creditor, McBurney, was not argued, but it was stated by counsel that, so far as the conclusions herein are relevant, they will be applied in its disposition.

The report of the master upon the facts herein is accepted. Inasmuch as the finding of the court is adverse to the claim of the trustee, and he insists that certain other facts should be found in order to present and preserve his rights, the report may be referred back to the master, to incorporate therein such further finding of facts as may be necessary.